[No. 11833.   In Bank. — January 20, 1888.]

## JOHN HALL, APPELLANT, *v.* COUNTY OF LOS ANGELES, RESPONDENT.

BOARD OF SUPERVISORS — ERECTION OF COUNTY JAIL — ADOPTION OF PLANS ON CONDITION. — A resolution of a board of supervisors of a county adopting certain plans submitted to them by an architect for the erection of a county jail in pursuance of their proposal therefor, on condition that the board receive a bid from a reliable party who would give sufficient bonds to erect the jail in conformity with the plans for a specified sum, is an "adoption" of such plans, within the meaning of subdivision 9 of section 25 of the county government act.

ID. — FULFILLMENT OF CONDITION. — The condition contained in the resolution is fulfilled if the board receive a bid from a reliable party to construct the jail in accordance with the plans for the amount limited, and who is willing to enter into a sufficient bond therefor. It is not necessary to the fulfillment of the condition that the board actually accept the bids.

ID. — RESCISSION OF CONTRACT — FRAUDULENT REPRESENTATIONS — SLANDER OF MEMBERS OF BOARD. — The board of supervisors are justified in rescinding the contract if they had been induced to execute it through the fraudulent representations of the architect, but cannot rescind it on the ground that the architect had slandered certain members of the board.

APPEAL from a judgment of the Superior Court of Los Angeles County.

The facts are stated in the opinion.

*Williams & McKinley,* for Appellant.

When the county, by its board of supervisors, regularly adopted the plans of the plaintiff, and accepted his services as architect, it became liable by implication to pay their reasonable worth, unless there was some breach by the plaintiff of the condition upon which he was employed; and if the plaintiff was prevented by the act of the defendant from performance of the condition, the condition would be immaterial. (*Winbigler* v. *Los Angeles,* 45 Cal. 38; *Trauter* v. *Sacramento,* 61 Cal. 271; Dillon on Municipal Corporations, sec. 374; *People* v. *San Francisco,* 27 Cal. 655; *San Francisco Gas Co.* v. *San Francisco,* 9 Cal. 453; *Argenti* v. *San Francisco,* 16 Cal. 267; *Carey* v. *P. & C.,* 33 Cal. 696; *Safford* v. *Albany,* 6 Johns. 1; *Brady* v. *Brooklyn,* 1 Barb. 584; *Clark* v. *Washington,* 12 Wheat. 40; *Ross* v. *Madison,* 1 Cart. 283.) The power to contract absolutely carries with it the power to attach such conditions to the contract as will render it beneficial to the county.

*George M. Holton,* and *Bicknell & White,* for Respondent.

The board had no authority to adopt the plans conditionally. (County Government Act of 1883, sec. 25, subd. 9.) The validity of the plaintiff's claim was passed upon by the board, and its determination is conclusive. (*Colusa* v. *De Jarnett,* 55 Cal. 373; *Tilden* v. *Supervisors,* 41 Cal. 68; *El Dorado* v. *Elstner,* 18 Cal.

144; *Falls* v. *Paine*, 23 Cal. 302.)   The condition was not fulfilled, as the board was the exclusive judge of the reliability of the bidder.   (*Younger* v. *Supervisors*, 68 Cal. 241; *Dickey* v. *Polk Co.*, 58 Iowa, 28.)

HAYNE, C. — Further consideration has convinced us that our former opinion in this case was erroneous. The action is to recover the sum of two thousand five hundred dollars upon a contract alleged to have been made between the plaintiff and the county of Los Angeles, acting through its board of supervisors. The complaint alleges that the board invited proposals from architects for plans and specifications for the building of a jail.   In response to this invitation, the plaintiff sent in his plans and specifications, and the board thereupon passed the following resolution, viz.: " Resolved, that we adopt the plans of John Hall for a county jail, upon the condition that, after duly advertising for bids for the construction thereof, according to said plans and specifications, we receive a bid from a reliable party who will enter in a good and sufficient bond to construct the same, in conformity to said plans and specifications, for a sum not exceeding fifty thousand dollars; otherwise, it shall be in the discretion of the board to reject said plans, reserving to the board the privilege of making any alteration or change in said plans previous to advertising for bids as aforesaid, which shall be agreed to by said Hall, and which had been discussed by him and the board in considering the same."   It is then alleged that after advertisement, etc., the board received from a reliable party a bid for the construction of the jail, in accordance with said plans and specifications, for a sum not exceeding fifty thousand dollars, which party was ready, able, and willing to enter into a sufficient bond, etc.   The complaint then alleges, that at a meeting thereafter held the board passed the following resolution: " Whereas, it appears from facts in evidence before

this board that John Hall, whose plans for a county jail for the county of Los Angeles have been conditionally adopted, has been a party to the circulation of a baseless report, to the effect that money had been used, or was to be used, with the officers of this county and members of this board in connection with said jail plans; and whereas, the action of this board in adopting said plans was largely due to the advice of one Holcomb, who represented to said board and induced said board to believe that he was there as an unbiased expert, giving impartial advice to the board, whereas he was, as the board verily believes, the secret agent and advocate of said Hall; and whereas, said Hall has succeeded in procuring the adoption of his said plans and specifications by imposition practiced upon this board as above stated,—therefore, be it resolved, that the order heretofore, on the eighth day of January, 1886, made by this board adopting said plans and specifications, which said order is recorded in book 9, page 74, minutes of the board of supervisors, be and the same is hereby rescinded, vacated, and set aside, and said plans and specifications rejected." The complaint then alleges that Hall never was a party to the circulation of the report mentioned in the resolution last quoted, and that he had nothing to do with Holcomb; and denies the adoption of his plans was procured by any kind of fraud or imposition. The court below gave final judgment for defendant upon demurrer to the complaint, and the plaintiff appeals.

If plaintiff procured the adoption of his plans through the advocacy of Holcomb, who pretended to be, and was believed by the board to be, an unbiased expert, but was in fact the agent of plaintiff, there was such fraud as justified the board in rescinding the contract. But he says he did not, and upon demurrer it must be assumed that his statement is true. If it is not true, it is for the board to set up the facts constituting the fraud in their

answer, and prove them at the trial. If this is done, the defendant will be entitled to judgment. But the other ground alleged in the resolution was not sufficient to authorize the rescission of the contract. If Hall slandered the members of the board, their remedy was to sue him for damages for the slander. They cannot rescind the county's contract to avenge their personal injuries. It is contended in support of the judgment, however, in the first place, that the board had no power to make a conditional contract with the plaintiff. The argument is, that subdivision 9 of section 25 of the county government act provides that the board has power to cause to be erected a county jail, "provided that none of the aforesaid buildings shall be erected or constructed until plans and specifications shall have been made therefor, and *adopted* by the board," and that a conditional adoption does not satisfy this requirement. But we think the plans were "adopted" within the meaning of this provision. The condition was a condition subsequent, going to defeat the adoption which was effected by the resolution, and was, in our opinion, a prudent and proper provision for the board to make.

In the next place, it is argued that the condition was not fulfilled; that the first resolution means that a bid of the kind specified must be *accepted* by the board; and that it did not accept any. But the resolution does not say "accepted." It says "received." And we do not think the expressions are equivalent. Probably most men have received many invitations and proposals which they have not accepted. In popular usage the words certainly differ in meaning. And we are not aware of any technical meaning which they have. The context supports this view. For it is provided that the party bidding must be "reliable," and that he must be willing to give bonds. What was the use of putting in these provisions, upon defendant's theory? The whole would be included in the word "accepted." The object prob-

ably was to be reasonably sure that the plans did not require too great an outlay, and this was accomplished when the board found a reliable party who was willing to do the work and give bonds for its satisfactory performance. The other points made do not require special notice.

We therefore advise that the judgment be reversed, with directions to overrule the demurrer to the amended complaint.

BELCHER, C. C., concurred.

FOOTE, C., concurring.—I agree with what is said by my associates in the foregoing opinion, except that I am by no means clear, where the word "received" was used in the resolution of the board of supervisors, that it was not intended to include an "acceptance" of a bid.

The COURT.—For the reasons given in the foregoing opinion, the judgment is reversed, with direction to the court below to overrule the demurrer to the amended complaint.

PATERSON, J., dissenting.—I dissent. The board is the proper and the only tribunal to determine whether one proposing to do certain work for the county is a reliable party or not. The judgment of the superior court on that question cannot be substituted for that of the board; but if the complaint states a cause of action, this can be done. The fact that the bidder can and will enter into a good and sufficient bond, of course, does not determine his reliability. By "a reliable party" the board evidently meant a party in whom they—the members of the board—had confidence,—one so skilled, careful, and honest that there would be no necessity for a suit on his bond. The reasons given by the board for their second order may be very poor, and so unjust and libelous that plaintiff may maintain an action against the

members thereof; but this fact does not supply the element necessary to create a contract between him and the county of Los Angeles, viz., a bid from a party known to the *board* to be *reliable.*